UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACI RICHARDS,

    Plaintiff,

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

    Defendant.
_____/

Case No. 1:09-CV-953

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Jaci Richards ("Plaintiff"), claims that Defendant, Unum Life Insurance Company of America ("Unum"), wrongfully terminated her long term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The parties have filed cross motions for judgment based upon the administrative record pursuant to the procedure set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). In addition, Plaintiff has moved for further briefing (docket no. 20). In rendering this Opinion and accompanying Order, the Court did consider Defendant's Reply Brief. For the reasons that follow, the Court will grant Unum's Motion for Judgment on the Administrative Record, deny Plaintiff's Motion for Judgment as a Matter of Law.

## **Facts**

In August 1998, Plaintiff began working for Johnson Controls, Inc. ("JCI"), at its Holland, Michigan manufacturing plant. (A.R. at 5.) JCI provides LTD benefits to its employees pursuant to Group Policy No. 562039 003 (the "Policy"), issued and administered by Unum. (A.R. at 64-65.)

The Policy, which became effective January 1, 2002, indicates that the "governing jurisdiction" is Wisconsin and contains the following discretionary acts provision:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

(A.R. at 65, 111.)

In February of 2006, Plaintiff stopped working and filed a claim for disability benefits.[1] (A.R. at 26, 46-49.) At that time, Plaintiff's primary care physician, Dr. James Applegate, sent Unum a report indicating that Plaintiff suffered from a ruptured lumbar disc, had been prescribed Vicodin and Motrin, and should cease working pending surgery. (A.R. at 48-49.) On March 3, 2006, Plaintiff underwent a lumbar laminectomy, performed by Dr. Reynaldo D. Castillo. (A.R. at 175.) Plaintiff's first office visits post-surgery indicated that she was responding well to the physical therapy, had very little pain, and was taking no medication. (A.R. at 1243, 1245.) At her third office visit with Dr. Castillo, though, which took place June 23, 2006, Plaintiff expressed concerns about returning to work. Her back and leg pain had begun to return and seemed to worsen as the day progressed, but JCI had indicated that she would not be able to return to work on anything but a full-time basis. (A.R. at 1241.) Dr. Castillo recommended that Plaintiff consider a functional capacity evaluation ("FCE")[2] to better determine exactly what she could and could not do, but issued

---

[1] Plaintiff originally filed only for short term disability benefits, but the claim was later transferred to Unum's LTD benefits unit. (A.R. at 38.)

[2] FCEs, which measure posture, flexibility, range of motion, strength, endurance, dexterity, coordination and consistency of performance, are often used by physicians to enhance the completeness and accuracy of occupational evaluations. The evaluation is generally conducted by a physical therapist or occupational therapist and can take anywhere between a half-day to a full week to complete. DAN J. TENNENHOUSE, M.D., J.D., F.C.L.M., ATTORNEYS MEDICAL DESKBOOK § 28:18 (4th ed. 2008).

a return to work slip effective June 26, 2006. The slip approved Plaintiff's return to her "regular former work position," albeit with some weight restrictions and a recommendation that she return at four hours per day for the first two weeks, increasing thereafter as tolerated. (A.R. at 189.)

Because Plaintiff's pain started returning five to six weeks post-surgery, Dr. Applegate referred her to Dr. Bennett Willard of Michigan Pain Consultants, PC. (A.R. at 125-26.) On June 31, 2006, Dr. Willard performed facet joint injections and predicted that "transforaminal S1 and L5 nerve blocks" may be needed in the future to help control her pain. (*Id.*) Dr. Applegate also referred Plaintiff to Dr. Shelley Freimark, a specialist in physical medicine and rehabilitation. On August 18, 2006, Dr. Freimark prescribed Neurontin and Flexeril and scheduled Plaintiff for electrodiagnostic testing and nerve conduction studies. (A.R. at 228-29.) The electrodiagnostic testing revealed findings "consistent with a chronic denervation pattern through L5-S1 nerve root distribution on the right side." (A.R. at 231.) Dr. Freimark increased Plaintiff's Neurontin dose and suggested that she follow up with Dr. Willard for epidural injections, noting that "more advance pain techniques such as spinal cord stimulation" may be needed in the future. (*Id.*)

On September 21, 2006, Unum approved Plaintiff's LTD claim. Unum mailed Plaintiff a letter, informing her of the approval and explaining that in order to maintain benefit eligibility, she must continue to meet the definition of "disability" as set out in the policy. For the first 12 months, "disability" would be defined as being "limited from performing the material and substantial duties of your regular occupation due to a sickness or injury" which leads to a loss in income of 20% or more. Thereafter, "disability" would be defined as being "unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." (A.R. at 419-21.)

Per Dr. Freimark's suggestion, Plaintiff underwent further clinical examination at the Cleveland Clinic, including a CT scan of the lumbar spine that revealed "postsurgical changes

3

consistent with right L5 laminotomy" and resulted in a diagnosis of post-laminectomy lumbar syndrome. (A.R. at 571, 631-32.) On April 2, 2007, Plaintiff elected to have a second surgery, an L5-S1 post-lateral fusion, which was performed by Dr. Michael Steinmetz at the Cleveland Clinic. (A.R. at 662.) Thereafter, Unum requested that Plaintiff have Dr. Steinmetz provide them with her current restrictions and limitations ("R & Ls"). In response, Dr. Steinmetz forwarded Unum a prescription for an FCE. ( A.R. at 761.) Unum agreed to accept the FCE report in lieu of Dr. Steinmetz's R & Ls. (A.R. at 765.) Although Plaintiff's initial twelve month period of disability expired on August 18, 2007, Unum refrained from making any claim determination until the FCE report was received and evaluated. (A.R. at 645, 767.)

On September 12, 2007, Plaintiff underwent an FCE at Northern Physical Therapy. The evaluation revealed the following:

> Overall Level of Work: Falls within Medium range. Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects Physical Demand requirement are in excess of those for Light Work.
>
> ***
>
> Tolerance for the 8-Hour Day: Based on this evaluation, the client is capable of sustaining the Medium level of work for an 8-hour day/40-hour week.

(A.R. at 834.) On September 25, 2007, Unum sent a copy of the FCE report to Dr. Steinmetz, who subsequently reported that he had reviewed it and agreed with the findings. (A.R. at 870.)

In a September 28, 2007 telephone call, Plaintiff informed Unum that she had begun seeing a new physician, Dr. Jurgen Luders. Plaintiff indicated that Dr. Luders intended to perform a myelogram in the near future but that he did not complete disability paperwork and was not providing her with any R & Ls. (A.R. at 909.) On October 2, 2007, Unum conducted a vocational assessment, which indicated that, considering the results of the FCE, Plaintiff would be qualified to perform the following occupations: food checker, receptionist, and surveillance-system monitor.

(A.R. at 913-16.) On October 4, 2007, Unum sent Plaintiff a letter notifying her that as of October 3, 2007, her LTD benefits were cancelled. According to the letter, the decision to terminate benefits was based upon the FCE results indicating a capacity for medium level work on a full-time basis, Dr. Steinmetz's indication that he agreed with the findings, the vocational assessment, and Plaintiff's statement that Dr. Luders was not providing her with any work restriction. (A.R. at 923-927.)

On March 27, 2008, Plaintiff's attorney forwarded Unum an appeal packet, which included reports from an October 8, 2007 myelogram and lumbar CT ordered by Dr. Luders and a "Physician Statement of Disability" from both Drs. Willard and Applegate. (A.R. at 1106, 1516-18, 1557.) Dr. Willard's statement, dated March 25, 2008, indicated that he disagreed with the findings of the FCE and vocational assessment and that, in his medical opinion, Plaintiff "is- and will continue to be - completely disabled from any and all full-time employment." (A.R. at 1517.) Dr. Applegate's statement evidenced his belief that Plaintiff "is disabled" and listed the medical conditions from which she suffers. (A.R. at 1557.) From the CT and myelogram, Dr. Luders observed "some asymmetry of her nerve roots, however no definite impingement of her nerve roots [was] seen." He also observed "questionable pseudoarthritis of the L5-S1 level." (A.R. at 1106.)

Unum referred the claim to Dr. Charles Sternbergh, who is employed by Unum as a medical consultant. Dr. Sternbergh reviewed the FCE and found it to be inappropriate because it was done only five months post-surgery, which is before maximum medical improvement can be reached, and because he believed Plaintiff's limitations and pain behavior would prevent her from sustaining medium work activities. (A.R. at 1590-94.) From the available medical information, Dr. Sternbergh opined that Plaintiff "may be able to sustain sedentary work activities, with accommodation to change position positions as needed for comfort and no requirement for prolonged standing, walking, twisting, or bending," but that it was uncertain whether she would be able to sustain full-

5

time or only part-time employment. (A.R. at 1593.) On May 7, 2008, Dr. Sternbergh contacted Dr. Willard by telephone to further discuss Plaintiff's condition. During that call, Dr. Willard suggested to Dr. Sternbergh that, with appropriate accommodations, he believed Plaintiff was capable of sedentary work starting on a part time basis and extending working hours as tolerated. (A.R. at 1617.) Dr. R. A. Hill, another Unum medical consultant, subsequently reviewed the file and indicated the medical records did not support any work restrictions relating to any of her general medical conditions. (A.R. at 1603.) In addition, Unum referred Plaintiff's claim for a second vocational assessment in light of Dr. Sternbergh's recent R & Ls. The assessment revealed that the previously-identified occupations remained viable and that all but one routinely offered part-time employment. (A.R. at 1632-33.)

On June 25, 2008, Unum sent a letter to Plaintiff explaining that it had completed its review, considered all of the information in Plaintiff's claim file, and determined that its original decision was appropriate. The letter then cited the following policy provision:

WHEN WILL PAYMENTS STOP?

We will stop sending you payments and your claim will end on the earliest of the following:

- after 12 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to.

(A.R. at 1753.) The letter then advised Plaintiff that because Unum found that she was not entitled to further benefits based upon a different policy provision than relied upon in the original denial, she had the right to another appeal. (A.R. at 1754.)

On December 23, 2008, Plaintiff filed a second administrative appeal. As with the first, this appeal packet contained updated medical records, as well as a new statement of disability from Dr. Derek A. Lado of Michigan Pain Consultants, PC. Dr. Lado, who had begun treating Plaintiff in October 2008, opined that Plaintiff's prior surgeries had resulted in a failed fusion and that "she is

6

and will continue to be - completely disabled from any and all full-time and/or part-time employment." (A.R. at 1851.) Dr. Lado also referred Plaintiff for another FCE, however, which took place December 19, 2008, and found her to be fit for "sedentary" work. The FCE also noted that "Ms. Richards's perception of her capacity is low, compared to what she actually can perform" and that "according to her, she has no set plans to return to work to her previous or any other job." (A.R. at 1869-71.) Upon reviewing the FCE, Dr. Lado reported that his own observations of Plaintiff, including discomfort when sitting and difficulties with her gait, appeared "somewhat inconsistent" with the FCE and opined that "it would be difficult for her to reliably maintain either an active or a sedentary job on a day to day basis." (A.R. at 1867.)

Unum again referred the claim to Dr. Sternbergh, who found the second FCE to be "comprehensive, detailed and balanced" and to reveal that Plaintiff has some residual work capacity. (A.R. at 1938.) It could not be certain whether Plaintiff could sustain full or part-time work, however, until she actually participated in such activities. (A.R. at 1939.) In a February 25, 2009, telephone conversation with Dr. Sternbergh, Dr. Lado said that he felt Plaintiff "could sustain part-time sedentary activities with appropriate accommodations, but without a change in [her] motivation to return to work, this would probably not be successful." (A.R. at 1949.) In a subsequent email, Dr. Sternbergh agreed that Plaintiff is fit for part-time sedentary work:

> It is my opinion, to a reasonable degree of medical certainty, the claimant, Jaci Richards, could sustain part-time sedentary work at 20 hours/week, or 4 hours/day. Appropriate accommodation would be the ability to change positions as needed for pain with no requirement for prolonged standing, walking, twisting, or bending. Lifting limitation would be 10 pounds occasionally.

(A.R. at 1967.)

On April 15, 2009, Unum informed Plaintiff that it was again affirming its original decision to terminate benefits. The letter indicated that the decision was based on the totality of the information in Plaintiff's file, including that her own physician, Dr. Lado, agreed that she is capable

7

of at least part-time sedentary work. (A.R. at 1970-74.) This was Unum's final decision. On October 15, 2009, Plaintiff filed this suit seeking reversal of Unum's decision.

## Law and Analysis

### I. Standard of Review

The parties vehemently dispute the appropriate standard of review to be applied in this case. The law itself is clear: the plan administrator's decision is reviewed *de novo*, "unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the decision is reviewed under the "highly deferential arbitrary and capricious standard of review." *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989)). Despite the discretionary acts provision included in the Policy, which clearly grants Unum such discretionary authority, Plaintiff argues that the court should, nonetheless, apply the *de novo* standard of review.

Plaintiff's argument is based on a letter dated May 15, 2007, from Unum to the Michigan Office of Insurance Services ("OFIS"), in which Unum certified that as of March 1, 2007, it would no longer be applying the discretionary acts language to its policies. (Pl.'s Br. in Supp. of Mot. for J. as a Matter of Law Ex. 1.) This letter was written in accordance with OFIS regulations, which became effective June 1, 2007, and state in pertinent part:

> (c) On and after the first day of the first month following the effective date of these rules, a discretionary clause issued or delivered to any person in this state in a policy, contract, rider, indorsement, certificate, or similar contract document is void and of no effect. This does not apply to contract documents in use before that date, but does apply to any such document revised in any respect on or after that date.
>
> \*\*\*
>
> (e) By the first day of the second month following the effective date of these rules, each insurer transacting insurance in this state shall submit to the commissioner a list of all forms in effect in Michigan that contain discretionary clauses and shall submit

> a certification that the list is complete and accurate. If an insurer has no such forms in effect, it shall submit a letter to the commissioner reporting and certifying that fact.

MICH. ADMIN. CODE r. 500.2202 (2010). Because Unum no longer had discretionary authority, Plaintiff asserts, the Court must review its decision *de novo*.

Unum, in turn, argues for a deferential standard of review for the following reasons: (1) the Court may not consider the OFIS letter because it is not part of the administrative record; (2) in any event, any agreement Unum had with OFIS is irrelevant because this plan is governed by Wisconsin law; and (3) even if Michigan law applies and the letter is considered, the agreement had no effect on policies already in existence, but applied only prospectively.

For the purpose of this Opinion, the Court will assume that the *de novo* standard applies. Obviously, if UNUM prevails under the *de novo* standard, it would prevail under the arbitrary and capricious standard. When reviewing a denial of benefits under an ERISA plan *de novo*, the Court's role "is to determine whether the administrator . . . made a correct decision." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002) (citation omitted). "The administrator's decision is accorded no deference or presumption of correctness." *Id.* at 809. Reviewing only the record before the Administrator, the Court must determine "whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." *Id.*

## II.     The Original Termination of Benefits

Under the Policy, Plaintiff had to qualify as "disabled" to be eligible for LTD benefits. After the first twelve months of benefits, the definition of disability changed from a "regular occupation" definition to an "any gainful occupation" definition. (A.R. at 83.) As such, Unum reviewed Plaintiff's LTD claim after the first twelve months to verify her continued eligibility for benefits

under the second definition. (A.R. at 644-45.) Unum terminated Plaintiff's LTD benefits as of October 3, 2007, finding that she was not "disabled" under the "any gainful occupation" definition.

Plaintiff asserts that Unum's sole justification for terminating Plaintiff's LTD benefits was the opinion of Dr. Sternbergh, a mere "record reviewer" employed by Unum, when Plaintiff's treating physicians unanimously agreed that she was disabled. This is an inaccurate characterization of the information before Unum. The record shows that Unum's initial decision to terminate benefits was based upon the following: (1) an FCE, ordered by Plaintiff's own physician, Dr. Steinmetz, which found her capable of sustaining medium level work on a full-time basis (A.R. at 834); (2) Dr. Steinmetz's confirmation that he agreed with the findings of the FCE (A.R. at 870); (3) a vocational assessment qualifying Plaintiff for several occupations existing in the local labor market (A.R. at 913-16); and (4) Plaintiff's confirmation that her most recently retained physician, Dr. Luders, would not be providing her with any work restrictions (A.R. at 909). Contrary to Plaintiff's contention, her treating physicians did not unanimously find her to be disabled, *see* discussion *infra* Part III, and Unum's initial decision to terminate benefits was not based on Dr. Sternbergh's opinions at all, as he did not come into the picture until the first appeal. Based upon the information before Unum at the time it originally terminated her benefits, the Court finds that Unum properly found that Plaintiff was no longer disabled under the Policy.

## III. Administrative Appeals

Unum originally terminated Plaintiff's benefits upon a finding that she was no longer "disabled" as set out in the Policy. Under the Policy, LTD benefits also terminate "after 12 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to." (A.R. at 1753.) It was under this Policy provision that Unum denied both of Plaintiff's administrative appeals.

Again, the record does not support Plaintiff's assertion that Unum's sole justification for terminating her LTD benefits was the opinion of Dr. Sternbergh, a mere "record reviewer" employed by Unum. To begin, it is not true, as Plaintiff asserts, that Plaintiff's treating physicians unanimously agreed that she was disabled from any and all employment. Although at the time of the first appeal Dr. Willard provided a statement of disability evidencing his belief that Plaintiff was completely disabled from *full-time* employment, he later opined that Plaintiff was capable of sedentary work starting on a part-time basis. (A.R. at 1516-18, 1617.) At the time of the second appeal, Dr. Lado provided a statement of disability that described Plaintiff as completely disabled from employment, whether full or part-time. At the time of Dr. Lado's statement, however, he also referred her for another FCE, which found her fit for sedentary work. (A.R. at 1851, 1870.) Although Dr. Lado initially described the FCE as "somewhat inconsistent" with his own observations of Plaintiff, in a follow-up conversation with Dr. Sternbergh he subsequently confirmed his belief that Plaintiff could sustain part-time sedentary work with appropriate accommodation.[3] (A.R. at 1867, 1949.)

Moreover, it is not the law of this circuit, as Plaintiff suggests that "ordinarily the opinions of treating physicians who have actually examined plaintiff will outweigh the opinions to the contrary of physicians who have merely undertaken a 'cold' review of the medical file." (Pl.'s Br. in Supp. of Mot. for J. as a Matter of Law at 19.) It is true that whether a doctor actually examined the plaintiff is a factor to consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician. *Kalish v. Liberty*

---

[3] In her brief, Plaintiff cites *Russell v. Unum Life Insurance Co. of America*, 40 F. Supp. 2d 747, 751 n.2 (D.S.C. 1999), as support for the contention that Dr. Lado's "supposed comments" to Dr. Sternbergh on the telephone should hold "little weight" where he previously provided a written statement of disability to the contrary. The Court disagrees. Here, unlike *Russell*, Dr. Sternbergh sent Dr. Lado a letter summing up their telephone conversation and asking Dr. Lado to return the letter with comments, if any, within 10 days. The letter was returned, with no comments, "per Dr. Lado's request" along with a $200 consult fee. (A.R. at 1949.) There is no reason to discredit the contents of the letter.

*Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005). Plan administrators are under no obligation, however, to accord special weight to the opinions of treating physicians over those of other consulting physicians, including those whose opinions are based on a file review. *See Black & Decker Disability Plan v. Nord.*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1672 (2003) (holding that courts may not require administrators to automatically "accord special weight to the opinions of a claimant's physician"); *Kalish*, 419 F.3d at 508 ("Reliance on a file review does not, standing alone, require the conclusion that [a plan administrator] acted improperly.") (citation omitted); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) ("[W]e find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits review."). As such, Unum did not err in crediting the opinion of Dr. Sternbergh, its consulting physician, even though he did not physically examine Plaintiff.

Plaintiff next argues that the Policy provision on which Unum relied in denying her appeals requires that she was capable of gainful part-time employment, but *chose* not to work. For the "able to work but choose not to" provision to apply, Plaintiff contends, there must be some proof that she affirmatively *chose* not to work apart from the mere fact that she was not working. Unum, on the other hand, interprets the provision as imposing only the following burden on the plan administrator:

> [E]valuate the administrative record as a whole and determine whether (a) there is a credible medical opinion that the claimant is able to work in a gainful occupation on a part-time basis; and (b) an occupation exists in the labor market in the community in which the Plaintiff resides for which the claimant is suited by reason of her training, education, and experience.

(Def.'s Br. in Resp. to Pl.'s Mot. for J. as a Matter of Law at 13.)

"When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000). Any ambiguity must be "construed liberally in favor of the insured and strictly against the insurer." *Citizens Ins. Co. of Am., v.*

*MidMichigan Health Connectcare Network Plan*, 449 F.3d 688, 692 (6th Cir. 2006). Giving the plan language its plain meaning and construing it strictly against the drafter, the Court finds the provision to require some evidence that Plaintiff made an affirmative choice not to work. Although there is no evidence that Plaintiff turned down an offer of part-time employment, neither has she presented any evidence that she actively sought such employment. Moreover, during her second FCE, Plaintiff described her current vocational goals as "None, not returning to work." (A.R. at 1877.) The therapist conducting the evaluation also noted that Plaintiff "has no set plans to return to her previous or any other job." (A.R. at 1900.) As such, the Court finds sufficient evidence that Plaintiff "chose" not to work in the administrative record.

Finally, Plaintiff asserts that Unum violated "at least the spirit" of ERISA procedural regulations by relying "exclusively" on Dr. Sternbergh for both administrative appeals. The applicable regulations provide that, in order to have conducted a "full and fair review," the plan must:

> (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;
>
> ***
>
> (v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual.

29 C.F.R. §§ 2560.503-1(h)(3)(iii) and (v).

Plaintiff misreads the requirements of these provisions. Plan administrators are not prohibited from consulting the same doctor on different levels of appeal, as here, but rather from

13

consulting the same individual on appeal who was also consulted for the original benefit denial. *See Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 622 n.3 (7th Cir. 2008) (describing 29 C.F.R. § 2560.503-1(h)(3)(v) as prohibiting "the use of a medical consultant on appeal who was involved in the original benefit denial"); *see also Pitts v. Prudential Ins. Co. of Am.*, 534 F. Supp. 2d 779, 791 (S.D. Ohio 2008) (describing a violation of 29 C.F.R. § 2560.503-1(h)(3)(v) as "the most fundamental of procedural defects: an insurer . . . basing its decision on the opinion of its hired health care professional during the initial review and on appeal"). Nor did Unum rely *exclusively* on the opinion of Dr. Sternbergh for both appeals, as Plaintiff suggests. At each level of appeal, one of Plaintiff's own treating physicians agreed that Plaintiff was capable of sustaining sedentary employment on a part-time basis. Thus, the Court finds no violation of 29 C.F.R. § 25603.503-1(h)(3)(v).

Having conducted a de novo review of Unum's original decision to terminate Plaintiff's LTD benefits and both of its appellate decisions, the Court finds that Unum properly interpreted its plan in finding that Plaintiff was no longer eligible for benefits. Three of Plaintiff's own physicians, two of Unum's medical consultants, and two FCEs, neither of which was conducted at the behest of Unum, all confirmed that Plaintiff was capable of sustaining at least sedentary work on a part-time basis.

## **Conclusion**

For the foregoing reasons, the Court will enter judgment on the administrative record in favor of Unum. The Court will deny Plaintiff's request for judgment as a matter of law, but grant Plaintiff's request to supplement.

An Order consistent with this Opinion will be entered.

Date: October 19, 2010         /s/ Gordon J. Quist
                                GORDON J. QUIST
                                UNITED STATES DISTRICT JUDGE